UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RILEY BENJAMIN**, on behalf of himself and others similarly situated,<br>  Correctional Treatment Facility<br>  1901 E Street SE<br>  Washington, D.C. 20003<br><br>                    Plaintiff,<br><br>        v.<br><br>**REV. NICOLE COLBERT**, Supervisory Chaplain for the D.C. Department of Corrections, in her individual and official capacities<br>  1901 D Street SE<br>  Washington, D.C. 20003<br><br>**REV. JIMMIE ALLEN**, Chaplain for the D.C. Department of Corrections, in his individual and official capacities<br>  1901 D Street SE<br>  Washington, D.C. 20003<br><br>**JACQUELINE WILLIAMS**, Deputy Director of Education, Reentry, and Case Management for the D.C. Department of Corrections, in her individual and official capacities<br>  1901 D Street SE<br>  Washington, D.C. 20003<br><br>                    Defendants. | No. 23-cv-_____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR COMPENSATORY, DECLARATORY, AND INJUNCTIVE RELIEF**
(Religious Freedom Restoration Act)

Plaintiff Riley Benjamin, on behalf of himself and a class of similarly situated Jewish individuals who are or will be in the custody of the District of Columbia Department of Corrections (DOC), brings this action against Defendants Reverend Nicole Colbert, Chaplain Jimmie Allen,

1

and Deputy Director Jacqueline Williams under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb, *et seq*. This suit arises from Defendants' refusal to provide Mr. Benjamin and other Jewish people in DOC custody with kosher meals absent external verification of their Jewish faith from a synagogue or rabbi, or through a letter of conversion. Defendants' practice impermissibly requires external verification of faith in order to obtain a religious accommodation and imposes an unjustified, overly restrictive, and substantial burden on Mr. Benjamin and putative class members' religious exercise; thus, Mr. Benjamin seeks class-wide declaratory and injunctive relief. He also brings an individual claim for damages. He alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action presents federal questions and seeks to redress the ongoing violation of free exercise rights secured by RFRA, 42 U.S.C. §§ 2000bb, *et seq*.

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all of the events or omissions giving rise to this action occurred, and continue to occur, in this District.

## PARTIES

3. Plaintiff Riley Benjamin is an adult, Jewish resident of the District of Columbia. He has been in DOC custody since July 2022.

4. Defendant Reverend Nicole Colbert is the DOC's Supervisory Chaplain. She plans, coordinates, directs, and supervises all aspects of the DOC's religious programs, including religious accommodation requests. At the time of the events at issue in this action, Defendant Colbert was acting within the scope of her employment. She is sued for damages in her individual capacity and for injunctive relief in her official capacity.

2

5. Defendant Jimmie Allen is a DOC Chaplain. At the time of the events at issue in this action, Defendant Allen was acting within the scope of his employment. He is sued for damages in his individual capacity and for injunctive relief in his official capacity.

6. Defendant Jacqueline Williams is the DOC's Deputy Director of Education, Reentry, and Case Management. She oversees the provision of religious services and chaplaincy at the DOC's Central Detention and Correctional Treatment Facilities. At the time of the events at issue in this action, Defendant Williams was acting within the scope of her employment. She is sued for damages in her individual capacity and for injunctive relief in her official capacity.

## FACTUAL ALLEGATIONS

7. Jewish dietary laws, or "kashruth," are a significant part of Jewish identity and religious practice.

8. Based on verses in the Torah, these laws have been interpreted by rabbinic authorities over thousands of years.

9. For many Jewish people, eating "kosher" or "fit" foods is both a commandment from God and a way to feel connected to Judaism during everyday life.

10. Jews keep kosher for spiritual reasons and also to feel unity and a shared identity with others who practice Judaism.

11. Plaintiff Riley Benjamin has been Jewish for several years.

12. Several years ago, Mr. Benjamin became interested in choosing the right faith for himself. After engaging in research and watching religious films, Mr. Benjamin decided to become Jewish.

13. Mr. Benjamin's fiancée and friends know that he is Jewish.

14. On July 27, 2022, Mr. Benjamin was arrested and sent to the Central Detention Facility at the D.C. Jail. He was transferred to the Correctional Treatment Facility in March 2023. He remains in DOC custody as of the filing of this lawsuit.

15. Authorities at the D.C. Jail have confirmed to Mr. Benjamin that he is classified as Jewish in the DOC's internal case management system.

16. As far as Mr. Benjamin is aware, he has been classified as Jewish in the case management system throughout his incarceration.

17. Shortly after Mr. Benjamin arrived at the D.C. Jail in the summer of 2022, he submitted an Inmate Request Slip asking for kosher meals so that he could maintain a diet in accordance with his faith.

18. On August 29, 2022, having not received kosher meals, Mr. Benjamin sent a second Inmate Request Slip, this time addressed directly to Defendant Colbert. Again, he asked to be provided with kosher meals so that he could eat a diet in accordance with his faith while in DOC custody.

19. Defendant Colbert denied Mr. Benjamin's second request on September 7, 2022, writing: "Please provide the name and number of your rabbi and temple that will verify you[r] connection to this faith community or provide your letter of conversion as required by the laws of the Jewish faith."

20. Mr. Benjamin filed a "Step 1" informal grievance that same day, writing "I am Jewish and was denied my Jewish religion items by Rev Colbert," and again requesting kosher meals.

21. On September 27, 2022, Defendant Jimmie Allen denied that grievance, providing the same boilerplate language requiring external verification: "Please provide the name and number of your rabbi and temple that will verify your connection to this faith community or your letter of conversion as required by the laws of the Jewish faith."

22. After this denial, Mr. Benjamin continued to grieve the issue for several months, filing, in total, at least fifteen request slips, grievances, or appeals of grievances concerning Defendants' refusal to provide Mr. Benjamin with kosher meals absent external verification of his faith.

23. In these filings, Mr. Benjamin repeatedly requested kosher meals so that he could eat a diet in accordance with his faith. He emphasized that his Jewish faith was an intensely personal choice that should not have to be verified by an external rabbi or synagogue.

24. Mr. Benjamin's requests, grievances, and appeals were all denied.

25. Finally, on December 28, 2022, Mr. Benjamin received a denial of his "Step 4" appeal.

26. Attached to the denial was a typed response, also dated December 28, 2022, signed by Defendant Williams. This document states that, according to DOC policy, it is "a requirement to provide documentation to verify [Mr. Benjamin's] faith affiliation," and that "a religious diet [could] not be approved until [Mr. Benjamin's] religious affiliation ha[d] been established and verified[.]"

27. Mr. Benjamin has never heard of any Christian or Muslim person in DOC custody being asked for external verification of their faith in order to receive religious accommodations. On information and belief, Christian or Muslim individuals in DOC custody are not asked for external verification of their faith in order to receive religious accommodations.

28. In the winter of 2022-23, Mr. Benjamin and another Jewish person in DOC custody spoke with Defendant Colbert in person about the denial of their religious accommodation requests.

29. Defendant Colbert continued to refuse their requests for accommodation but said that she would bring a rabbi to the D.C. Jail to evaluate whether they were Jewish, and formally convert them to Judaism if they were not.

30. No rabbi ever arrived to speak with Mr. Benjamin.

5

31. Throughout this process, no DOC official ever asked Mr. Benjamin about his religious beliefs, beyond insisting on external verification.

32. As a result of these consistent denials of his kosher meal requests, Mr. Benjamin felt frustrated, discriminated against, and disrespected in in his Jewish faith. He feels that the Defendants' external religious verification practice is unfair and without basis.

33. Despite Defendants' external religious verification practice and the denial of his kosher meal requests, Mr. Benjamin has remained committed to practicing his Jewish faith in the ways that he can.

34. Mr. Benjamin requested all the Jewish reading material that was available at the D.C. Jail. When Defendant Colbert told him that none was available, he independently searched for, and found, Jewish reading materials and videos on his tablet. He read and watched many of those materials to learn more about and stay connected with his faith.

35. Mr. Benjamin is not the only Jewish individual to be denied kosher meals because of Defendants' external religious verification practice.

36. When Keith Barnes, another Jewish individual, was in DOC custody between November 2021 and June 2023, he was denied kosher meals because of the absence of external verification of his Jewish faith from a synagogue or rabbi, or through a letter of conversion.

37. DOC officials demanded this proof even though Mr. Barnes had been in DOC custody previously, and during that prior period of incarceration was given kosher meals and attended Jewish religious services.

38. As far as Mr. Barnes knows, he is still listed as Jewish in the DOC's case management system.

39. Defendants' external verification requirement left Mr. Barnes feeling frustrated and without a spiritual outlet during his time in DOC custody.

40. Mr. Barnes is not aware of anyone who is Christian or Muslim being asked for similar forms of external verification in order to receive religious accommodation at the D.C. Jail.

41. John Henri, a Jewish individual currently in DOC custody, was also denied kosher meals under Defendants' external verification practice.

42. In a Religious Services Inmate Request Form, Mr. Henri explained that he had eaten a kosher diet before his incarceration and requested to be placed on a kosher diet.

43. When Defendant Colbert rejected Mr. Henri's request for kosher meals because of the absence of external verification of his Jewish faith by a synagogue or rabbi, Mr. Henri informed her that he was going on a hunger strike.

44. Despite Mr. Henri's hunger strike and his repeated grievances to D.C. Jail authorities, Defendants still refuse to provide Mr. Henri with kosher meals absent external verification.

45. Defendants' external verification practice has left Mr. Henri feeling offended, humiliated, and discriminated against, as he continues to be forced to violate his religious beliefs multiple times a day.

46. Mr. Henri has also never heard of any Christian or Muslim person in the D.C. Jail being asked for outside proof of their religion.

47. Beyond the experiences of Mr. Henri and Mr. Barnes, Mr. Benjamin has personally talked to or heard about multiple people in DOC custody who identified themselves as Jewish but were denied Jewish accommodations by Defendants.

**CLASS ALLEGATIONS**

48. Pursuant to Federal Rule of Civil Procedure 23(b)(2), Plaintiff brings this lawsuit against Defendants on behalf of all Jewish individuals who are or will be in DOC custody and request a kosher diet as a religious accommodation.

49. <u>Numerosity</u>: On information and belief, approximately 29-36 Jews who wish to adhere to a kosher diet enter DOC custody each year and are subjected to Defendants' religious verification practice. This estimate is derived from DOC data and research performed by the Pew Research Center. According to DOC, there were 4,062 intakes in fiscal year ("FY") 2022. D.C. Dep't of Corr., *DC Department of Corrections Facts and Figures October 2022*, at 9 (2022).[1] During the fourth quarter of FY 2022, Jewish individuals comprised 4.33% of DOC intakes. *Id.* at 16. Applying this percentage to the 4,062 intakes that took place during all of FY 2022, it follows that roughly 171 Jewish people entered DOC custody in FY 2022. The Pew Research Center reports that 17% of U.S. Jews keep a kosher diet, *see* Pew Research Center, "Jewish Americans in 2020,"[2] suggesting that approximately 29 of the roughly 171 Jewish-identifying DOC inmates admitted in FY 2022 were kosher adherents. DOC data from more recent quarters suggest that the annual number may be closer to 32 or 36. *See* D.C. Dep't of Corr., *DC Department of Corrections Facts and Figures January 2023*, at 9, 16 (2023) (showing that 4.24% of DOC's 1,111 intakes in FY 2023 Q1 were Jewish, suggesting that roughly 8 kosher adherents entered custody in three months);[3] D.C. Dep't of Corr., *DC Department of Corrections Facts and Figures July 2023*, at 9, 16 (2023) (showing that 3.52% of DOC's 1,509 intakes in FY 2023 Q3 were Jewish, suggesting that roughly 9 kosher

---

[1] Available at: https://doc.dc.gov/sites/default/files/dc/sites/doc/publication/attachments/DC%20Department%20of%20Corrections%20Facts%20and%20Figures%20October%202022.pdf (Last accessed Aug. 9, 2023).
[2] Available at: https://www.pewresearch.org/religion/2021/05/11/jewish-americans-in-2020/ (Last accessed Aug. 9, 2023).
[3] Available at: https://doc.dc.gov/sites/default/files/dc/sites/doc/publication/attachments/DC%20Department%20of%20Corrections%20Facts%20and%20Figures%20January%202023.pdf (Last accessed Aug. 9, 2023).

adherents entered custody in three months).[4] Factoring in the number of kosher adherents who entered DOC custody in prior years and remain in DOC custody, as well as those who will enter DOC custody in the future, timely identification and litigation of each proposed class member's individual claims would be impracticable. Class members also include individuals held pretrial and individuals held for transfer to other facilities and thus may be held in DOC custody for limited periods of time, making timely identification and litigation of their individual claims impracticable. Further, proposed class members are highly unlikely to file individual suits on their own, as many of them are indigent, currently incarcerated, and lack access and financial resources to obtain counsel to bring such suits.

50. <u>Commonality</u>: The claims of the class share common issues of fact and law, including but not limited to whether Defendants have a policy or practice requiring external religious verification as a prerequisite to providing Jewish dietary accommodations, and whether that policy or practice is unlawful under RFRA. The resolution of these questions will drive the outcome of the litigation.

51. <u>Typicality</u>: The claims of Plaintiff are typical of those of the class as a whole. Mr. Benjamin requested kosher meals but was denied them because Defendants insisted on receiving external verification of Plaintiff's Jewish faith. Thus, Plaintiff faced, and continues to face, the same type of harm—an unlawful burden on his exercise of religion—that proposed class members face under Defendants' religious verification practice.

---

[4] Available at https://doc.dc.gov/sites/default/files/dc/sites/doc/publication/attachments/Facts%20and%20Figures%20PPT%20Workbook%20_%20Q3%20July%20FY2023.pdf (Last accessed Aug. 9, 2023). No other quarterly data for 2023 was available on DOC's website.

52. <u>Adequacy</u>: Plaintiff is an adequate class representative who meets all the requirements of Rule 23(a)(4). He has no conflicts of interest in this case with other class members. He will fairly and adequately represent the interests of the class and understands the responsibilities of a representative. Counsel for Plaintiffs cumulatively have considerable experience with the factual and legal issues involved in representing individuals in jail and prison, in asserting civil rights claims, and in pursuing class actions. Counsel will vigorously pursue the interests of the class.

53. <u>Rule 23(b)(2)</u>: Defendants have acted or refused to act on grounds generally applicable to the class in that Defendants' practice of requiring external verification of faith has affected all class members. It follows that a declaration recognizing the unlawfulness of this religious verification practice and a corresponding injunction prohibiting Defendants from maintaining that practice, would provide relief to every member of the class. Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2).

**CAUSES OF ACTION**

**CLAIM I: Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*.**
(Plaintiff Riley Benjamin and proposed class members, for injunctive relief)

54. Under RFRA, the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless "it demonstrates that application of the burden to the person is—(1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1.

55. RFRA's provisions apply to Defendants because they are District of Columbia officials acting within the scope of their employment under color of law. *See* 42 U.S.C. § 2000bb-2(1)–(2).

56. RFRA defines "exercise of religion" broadly, to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb–2(4) (citing 42 U.S.C. § 2000cc–5).

57. Defendants' practice of denying kosher meals to Jews in DOC custody, absent external verification of their faith from a synagogue, rabbi, or letter of conversion, substantially burdens Mr. Benjamin's and proposed class members' religious exercise.

58. Defendants' external verification practice is not in furtherance of a compelling governmental interest and is an overly restrictive imposition that cannot meet RFRA's exceptionally demanding least-restrictive-means standard.

59. Through their external religious verification practice, Defendants violate and will continue to violate the free exercise rights secured to Mr. Benjamin and proposed class members by RFRA.

60. As a result of Defendants' unlawful actions, Mr. Benjamin and the proposed class members are suffering or will suffer irreparable injury.

61. Mr. Benjamin and the proposed class members are entitled to injunctive and declaratory relief against Defendants to halt and prevent the violation of their rights under RFRA. 42 U.S.C. § 2000bb-1(c).

**CLAIM II: Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*.**
(Plaintiff Riley Benjamin, for damages)

62. Defendants' denial of Mr. Benjamin's request for kosher meals violates his rights under RFRA for the reasons stated above, which are incorporated herein by reference.

63. Defendants' violation of Mr. Benjamin's RFRA rights has caused him emotional distress, dignitary harm, and loss of opportunity to practice his religion.

64. Mr. Benjamin is entitled to damages against the Defendants, in their individual capacities, to compensate him for the violation of his rights under RFRA. 42 U.S.C. § 2000bb-1(c); *see Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020).

65. The violation of RFRA's plain text is sufficient to establish Defendants' liability because the defense of qualified immunity is unavailable under RFRA.

## RELIEF REQUESTED

WHEREFORE, Plaintiff and proposed class members respectfully request that the Court:

A. CERTIFY the case as a class action on behalf of the proposed class;

B. APPOINT Plaintiff as the Class Representative and undersigned counsel as Class Counsel;

C. DECLARE that Defendants have unlawfully burdened Plaintiff's and class members' religious free exercise rights in violation of RFRA, 42 U.S.C. § 2000bb, *et seq*.;

D. ENTER a preliminary and permanent injunction prohibiting Defendants from requiring Jewish people who are in or will be in DOC custody to provide external verification of their religion as a condition for approval of their kosher meal requests;

E. ENTER a preliminary and permanent injunction requiring Defendants to provide kosher meals to Jewish people who request kosher meals and who have a sincere desire to keep kosher in order to practice their faith;

F. AWARD Mr. Benjamin compensatory damages against Defendants in an amount appropriate to the evidence adduced at trial;

G. AWARD Mr. Benjamin and the class their reasonable attorneys' fees and costs in this action as provided in 42 U.S.C. § 1988(b); and

H. GRANT Plaintiff such further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiffs request a trial by jury on any and all issues raised by this Complaint which are triable by right of a jury.

August 10, 2023

Respectfully submitted,

/s/ Scott Michelman
Scott Michelman (D.C. Bar No. 1006945)
Laura K. Follansbee (D.C. Bar No. 1782046)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
  of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
202-601-4267
smichelman@acludc.org

*Counsel for Plaintiff*[*]

---

[*] Counsel would like to acknowledge law student Daniel Xu and Paralegal Elaine Stamp for their assistance in the preparation of this filing.